Opinion by WILSON, J.  In accordance with stipulation of counsel that the merchandise consists of glass bead Christmas tree ornaments similar in all material respects to those the subject of *Walco Bead Co., Inc.* v. *United States* (29 Cust. Ct. 62, C. D. 1445), the claim of the plaintiff was sustained.

**No. 59996.**—Melchers, Inc. *v.* United States, protest 188988–K (New York).

Opinion by WILSON, J.  It was stipulated that for duty purposes the clean content of the wool in question was determined in accordance with the instructions contained in T. D. 53159, which was issued following *United States* v. *Fred Whitaker Company, Inc.* (40 C. C. P. A. 19, C. A. D. 492).  In that case, it was held that the statutory language, clean content of wool, as used in paragraph 1102 (b), was construed to mean the product commercially usable as wool and from which all the weight of grease and foreign material has been removed, including the wool fibers which are unavoidably and irrevocably lost as a result of commercially applied cleaning processes.  Accordingly, the wool in question was held dutiable at the rate applied by the collector on the basis of the percentages of clean content as set forth in the column headed "Clean Content T. D. 53159" in the schedule attached to and made a part of the decision in this case.

**No. 59997.**—H. J. Devoy and Ro Tex Products *v.* United States, protest 209541–K (New York).

Opinion by WILSON, J.  It was stipulated that for duty purposes the clean content of the wool in question was determined in accordance with the instructions contained in T. D. 53159, which was issued following *United States* v. *Fred Whitaker Company, Inc.* (40 C. C. P. A. 19, C. A. D. 492).  In that case, it was held that the statutory language, clean content of wool, as used in paragraph 1102 (b), was construed to mean the product commercially usable as wool and from which all the weight of grease and foreign material has been removed, including the wool fibers which are unavoidably and irrevocably lost as a result of commercially applied cleaning processes.  Accordingly, the wool in question was held dutiable at the rate applied by the collector on the basis of the percentages of clean content as set forth in the column headed "Clean Content T. D. 53159" in the schedule attached to and made a part of the decision in this case.

BEFORE THE SECOND DIVISION, JUNE 5, 1956

**No. 59998.**—W. X. Huber Co. *v.* United States, protest 962989–G (Los Angeles).

Opinion by RAO, J. In accordance with stipulation of counsel that 20 percent of the merchandise consists of rags used chiefly for papermaking, the claim of the plaintiff was sustained with respect to said 20 percent of the merchandise.

No. 59999.—W. X. Huber Co. v. United States, protest 56751–K (B) (Los Angeles).

Opinion by RAO, J. In accordance with stipulation of counsel that 20 percent the the merchandise consists of rags used chiefly for papermaking, the claim of the plaintiff was sustained with respect to said 20 percent of the merchandise.

No. 60000.—S. J. Charia & Co. v. United States, protest 258963–K/14298 (New Orleans).

Opinion by FORD, J. In accordance with stipulation of counsel that the merchandise consists of silk scarves or squares similar in all material respects to those the subject of *United States* v. *The Specialty House, Inc. Bryant & Heffernan, Inc., et al.* (42 C. C. P. A. 136, C. A. D. 585), the claim of the plaintiff was sustained.

BEFORE THE THIRD DIVISION, JUNE 5, 1956

No. 60001.—Sears, Roebuck and Co. v. United States, petition 7002–R (Boston).

EKWALL, Judge: This action seeks remission of additional duty assessed pursuant to the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489) on an importation of willow clothesbaskets in three sizes, imported from Belgium and entered at the port of Boston, Mass., on January 14, 1952. Said additional duties were assessed due to the fact that entry was made at values less than those found by the appraiser on final appraisement.

Petitioner introduced the testimony of two witnesses in support of the petition.

Mr. Arthur A. Sibbald, the first witness, described himself as the import manager of the petitioner. His testimony was substantially as follows: Clearance and entry of merchandise through customs throughout the entire United States is made through his office. He issues instructions as to how entry is to be made to customhouse brokers, employed by petitioner in practically every port of the United States. Petitioner has stores throughout the United States and makes importations at various ports, practically every principal port of the country. Petitioner's buyers are located in Chicago and are known as parent buyers, who have the final say as to buying merchandise. Price lists, samples, etc., are sent in from petitioner's foreign offices throughout the world for the buyers to make decisions as to purchase. All orders are cleared through the witness' office. In the event of a change in price, his office should receive copies of the letters to the